UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD HENRY,

     Plaintiff,

v.

KYLE MIHM, et al.,

     Defendants.

Case No. 22-cv-12830

Honorable Robert J. White

**OPINION AND ORDER SUSTAINING DEFENDANT KYLE MIHM'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, REJECTING THE REPORT AND RECOMMENDATION, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RULE 37(e) SPOLIATION SANCTIONS**

I.    <u>Introduction</u>

Arnold Henry is currently incarcerated with the Michigan Department of Corrections ("MDOC"). He commenced this 42 U.S.C. § 1983 action against two corrections officers at the Charles E. Egeler Reception and Guidance Center, Kyle Mihm and Daniel Shaffer. The complaint alleges that the officers violated the Eighth Amendment to the United States Constitution when they ordered Henry out of his cell unclothed, exposed his naked body to the view of other inmates, and ridiculed the size of his genitalia. Henry moved for the imposition of spoliation sanctions,

pursuant to Fed. R. Civ. P. 37(e), claiming that Mihm should be held culpable for allowing the prison's video surveillance system to overwrite footage depicting the alleged incident.

Before the Court is a report and recommendation from the magistrate judge dated August 22, 2025. (ECF No. 128).  The magistrate judge recommended that the Court defer resolving Henry's spoliation sanctions motion until a jury decides whether Mihm is culpable for losing the relevant video footage. (*Id.*, PageID.2456-57, 2477; *see also* ECF No. 92).   Mihm timely objected to the report and recommendation pursuant to Fed. R. Civ. P. 72(b)(2). (ECF No. 129).  Henry did not respond.

For the following reasons, the Court (1) sustains Mihm's objections to the magistrate judge's August 22, 2025 report and recommendation, (2) rejects the report and recommendation, and (3) grants in part and denies in part Henry's motion for Rule 37(e) spoliation sanctions.

II.    Background

A.    *Factual History*

Since Mihm does not object to the magistrate judge's factual summary, the Court finds that the recitation of the underlying allegations and the testimony at the evidentiary hearing is accurate.  The Court will, therefore, adopt the factual summary

2

as it appears in the report and recommendation. (ECF No. 128, PageID.2457-62, 2472-77).

B.    *Procedural History*

Henry moved for Rule 37(e) sanctions against Mihm, requesting (1) judgment in his favor on the Eighth Amendment claim, or in the alternative (2) an adverse instruction to the jury directing them to credit Henry's account of what transpired, or (3) "[a]ny other sanctions and relief the Court deems appropriate." (ECF No. 92, PageID.777).

The magistrate judge scheduled an evidentiary hearing after concluding that Mihm's culpability presented a "fact-intensive inquiry." (ECF No. 108, PageID.1994).  She received testimony from Henry, Mihm, Sergeant Spencer McGuire – Mihm's direct supervisor, and Assistant Deputy Warden Scott Dixon. (ECF No. 122).  The parties filed supplemental briefs after the hearing concluded. (ECF Nos. 124-27).

The magistrate judge issued a report and recommendation advising the Court to defer ruling on Henry's spoliation motion so that a jury may decide whether Mihm is culpable for destroying video footage of the alleged incident. (ECF No. 128, PageID.2456-57, 2477).  Mihm now objects to the report and recommendation on the grounds that: (1) imposing spoliation sanctions falls with the purview of judges – not juries, (2) Henry failed to carry his burden of establishing his entitlement to

Rule 37(e) spoliation sanctions, (3) there is no evidence to support the conclusion that Mihm exercised control over the relevant video footage, and (4) there is no evidence to support the conclusion that Mihm is culpable for losing the video footage.

III.   Legal Standard

District judges review *de novo* any part of the magistrate judge's recommended disposition "that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

IV.   Analysis

A.   *Federal Rule of Civil Procedure 37(e) Overview*

Federal district courts may impose sanctions for spoliation when a party destroys evidence in anticipation of litigation. *See Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016).  Federal Rule of Civil Procedure 37(e) addresses the spoliation of electronically stored information – like the prison video footage deleted here. *See, e.g., Bruin v. Swank*, No. 16-105, 2025 U.S. Dist. LEXIS 12869, at *16 (W.D. Ky. Jan. 24, 2025) (observing that prison "video footage . . . likely qualifies as Electronically Stored Information, or ESI, whose spoliation is governed" by Rule 37(e)).  The rule provides two exclusive avenues for imposing sanctions. *Kean v. Brinker Int'l, Inc.*, 140 F.4th 759, 772 (6th Cir. 2025); *see also Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020) (holding that Rule 37(e) "provides the

4

exclusive remedy for spoliation of electronically stored information . . . foreclosing reliance on the court's inherent authority.").

The first option – under Rule 37(e)(1) – authorizes district courts, "upon finding prejudice to another party from loss of the information" to "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).  The second option – under Rule 37(e)(2) – empowers district courts to (1) "presume that the lost information was unfavorable," (2) "instruct the jury that it may or must presume the information was unfavorable," or (3) "dismiss the action or enter a default judgment," so long as the district court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

The first option requires the movant to show that (1) the electronically stored information "should have been preserved in the anticipation or conduct of litigation," (2) the information was "lost because a party failed to take reasonable steps to preserve it," and (3) the information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e)(1); *see also Westley v. Harris*, No. 21-01672, 2025 U.S. Dist. LEXIS 252145, at *14 (N.D. Ohio Dec. 5, 2025).  As for prejudice, Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e)(1) advisory committee's note to

2015 amendment.  Instead, "[t]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *Id.*

The second option places the burden on the movant to establish the same three elements that Rule 37(e)(1) mandates, plus an additional showing that the offending party acted with the requisite culpable mental state, *i.e.*, intent. Fed. R. Civ. P. 37(e)(2); *see also Applebaum*, 831 F.3d. at 745 (holding that Rule 37(e)(2) requires the plaintiff to show intent).  "[A] court that has made that finding of intent need not make an independent finding of prejudice (as is required under Rule 37(e)(1)) in order to support action under Rule 37(e)(2)." 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2284.2 (3d ed. Sep. 2025 Update).  "The finding of intent, standing alone, can support a finding of prejudice as to lost information." *Id.*

### B.    The Appropriate Factfinder for Evaluating Rule 37(e) Violations

Mihm's first objection to the magistrate judge's report is that it recommended the Court defer ruling on the spoliation motion until a jury decides whether Mihm is culpable for losing the video footage. (ECF No. 129, PageID.2486-90; ECF No. 128, PageID.2457, 2477).  In his view, Henry must prove to a judge – not a jury – that a Rule 37(e) violation occurred. (ECF No. 129, PageID.2486-87, 2490).

To resolve this question, let's first consult the rule's text. *See Griesmar v. City of Stow*, No. 22-3151, 2022 U.S. App. LEXIS 34151, at *10 (6th Cir. Dec. 12, 2022)

(resorting first to the plain text when interpreting a Federal Rule of Civil Procedure). The rule's plain language expressly assigns the role of determining Rule 37(e)(1) and (e)(2) violations to "the court" as opposed to juries. Fed. R. Civ. P. 37(e); *see also Hoffer v. Tellone*, 128 F.4th 433, 440 (2d Cir. 2025) ("Rule 37(e) plainly contemplates that findings relevant to the imposition of sanctions, including the finding of an 'intent to deprive,' be made by courts.").

The advisory committee notes from the rule's drafters support this reading. They comment that Rule 37(e)(1) "leaves *judges* with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment (emphasis added).  And the drafters made a similar observation regarding the district court's function under Rule 37(e)(2), in that "[s]ubdivision (e)(2) limits the ability of *courts* to draw adverse inferences based on the loss of information in these circumstances, permitting them only when a *court* finds that the information was lost with the intent to prevent its use in litigation." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment (emphasis added).

While courts may "delegate the intent finding" under Rule 37(e)(2) "to the jury," that decision "is left to the court's discretion." *Hoffer*, 128 F.4th at 440; *see also* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment (allowing for the court "to conclude that the intent finding should be made by a

jury"). The Rule's drafters did not afford the same latitude to district judges under Rule 37(e)(1).

Longstanding authority bolsters this conclusion as well. Federal appellate court decisions confirm that resolving Rule 37 sanction motions, "including by imposing a case-terminating sanction, is solely within the purview of the district court as trier of fact." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 138 (2d Cir. 2023); *cf. KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 936-37 (6th Cir. 2020) (holding that the district court's award of a default judgment as a Rule 37 discovery sanction did not violate the offending party's Seventh Amendment right to a jury trial); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("We have held that a Rule 37 dismissal does not violate the right to a jury trial where a party fails to comply with court-ordered discovery."). So nothing in Rule 37(e)'s text, its accompanying interpretive notes, or the relevant precedents *compel* a jury to decide whether a party violated the rule.

The magistrate judge's opposite conclusion rests upon a misreading of the United States Supreme Court's decision in *Perttu v. Richards*, 605 U.S. 460 (2025). In *Perttu*, the Supreme Court addressed "whether a party has a right to a jury trial on [Prison Litigation Reform Act] exhaustion when that dispute is intertwined with the merits of the underlying suit." *Id.* at 464. The plaintiff in the case – a Michigan inmate – claimed that an MDOC corrections officer "engaged in a pattern of prolific

8

and repetitive sexual abuse, against at least a dozen inmates," including himself. *Id.* at 465. The inmate further asserted that the corrections officer threatened and retaliated against him for attempting to exhaust his administrative remedies. *Id.* The complaint alleged that the threats and retaliation violated the inmate's rights under the First Amendment to the United States Constitution. *Id.* at 466.

Reversing the district court's dismissal of the inmate's First Amendment claim on exhaustion grounds, the United States Court of Appeals for the Sixth Circuit held that "the Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under the PLRA would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case." *Id.* at 467. The Supreme Court agreed.

Affirming the court of appeals, the Court ruled that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id.* at 479. One of the Court's main concerns was that a judicial ruling on the exhaustion question would – through the doctrines of collateral estoppel or law of the case – preclude a jury from later considering the same underlying facts to decide the merits of the First Amendment retaliation claim. *Id.* at 475 ("We therefore cannot reject the possibility that a judicial ruling on PLRA exhaustion might have estoppel effect in a later jury trial.").

But *Perttu* is unhelpful to resolving Henry's spoliation motion for several reasons. *First*, *Perttu* is materially distinguishable from this case because it addresses the PLRA's exhaustion statute – a legal provision that is entirely unrelated to Federal Rule of Civil Procedure 37(e)'s content and remedial aims. *Second*, unlike the circumstances in *Perttu*, a decision about whether Mihm violated Rule 37(e) is *not intertwined* with the merits of Henry's substantive Eighth Amendment claim. Aside from dismissing the action or entering a default judgment pursuant to Rule 37(e)(2)(C), any other imposed Rule 37(e) sanction would not bar the parties from presenting the merits of their case to a jury.

And *third*, even with respect to the dispositive sanctions available under Rule 37(e)(2)(C) – dismissal and entry of a default judgment – every court of appeals to consider the question (including the Sixth Circuit) has decided that Rule 37's dispositive sanctions do not violate the Seventh Amendment's jury trial guarantee. *See KCI*, 801 F. App'x at 936-37 (holding that a default judgment imposed pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) did not violate the Seventh Amendment); *see also Rossbach*, 81 F.4th at 138 ("We now join those circuits and hold that a motion for sanctions, when premised on . . . discovery misconduct under Rule 37, does not implicate the Seventh Amendment's jury trial guarantee."); *Wyle*, 709 F.2d at 592 (same). Nor has the Supreme Court ever "indicated that a default judgment implicates the right to a jury trial." *KCI*, 801 F. App'x at 936. So, contrary to the

10

magistrate judge's opinion, *Perttu* has no bearing on whether a judge or jury should decide whether Mihm violated Rule 37(e).

The central takeaway from Rule 37(e)'s plain text and its interpretive authorities is twofold: (1) only judges are empowered to adjudicate Rule 37(e)(1) violations, and (2) "a district court *may*" – in its discretion – "reserve for the jury questions of fact related to" sanctions imposed under Rule 37(e)(2). *Hoffer*, 128 F.4th at 441 (emphasis in original).  As a result, Mihm's objection to the magistrate judge's recommendation that a jury must decide whether he is culpable for losing the video footage is sustained.  The Court will decide whether Mihm violated Rule 37(e)(1) since a jury cannot make that call.  And it will decide on its own whether Mihm violated Rule 37(e)(2) because the record is sufficient to make that determination without a jury's involvement.[1]

   C.   *Imputation of Responsibility for Lost Evidence*

---

[1] Another unresolved question in the Sixth Circuit is the standard of proof federal courts should apply when engaged in factfinding for the purpose of imposing Rule 37(e) sanctions.  The Court will apply the preponderance of the evidence standard consistent with the United States Court of Appeals for the Second Circuit's opinion in *Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025).  Although *Hoffer* specifically addressed the standard of proof for making factual determinations under Rule 37(e)(2), the same considerations discussed in *Hoffer* weigh in favor of employing the preponderance of the evidence standard in the Rule 37(e)(1) context. *See id.* at 439-40.

Under Rule 37(e), federal courts must first identify the person or entity responsible for losing the electronically stored information to ascertain whether they may be subject to sanctions.[2]   Consulting its plain text, the rule appears to exclusively govern "party" conduct.  For instance, spoliation sanctions are available solely when "electronically stored information . . . is lost because a *party* failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) (emphasis added).  And the most severe spoliation sanctions are reserved exclusively for situations where "the *party* acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (emphasis added).

In this case, Henry faults Mihm for the lost video footage.  And no one disputes that Mihm is a party defendant to this litigation.  But Mihm objects that he is not responsible for the lost footage because he "did not have control over the video" and he lacked the authority to "save the video" on his own. (ECF No. 129, PageID.2494).  The record supports his view.

---

[2] A critical distinction in terminology is important to the following discussion.  The concepts of responsibility and culpability are not synonymous in the Rule 37(e) analysis.  "Responsibility" is assigned to the person or entity who must answer for the lost electronically stored information because (1) they supervised access and maintained control over the information and lost it, or (2) they actively destroyed or deleted it.  "Culpability" assesses the responsible person or entity's blameworthiness for losing the electronically stored information, *i.e.*, whether they lost the information intentionally, knowingly, recklessly, negligently, or through some other punishable mental state. *Cf. Culpability*, *Responsibility*, Black's Law Dictionary (6th ed. 1990).

Both Mihm and Sergeant McGuire testified that Mihm could not access the relevant video surveillance footage (ECF No. 122, PageID.2167, 2229-30, pp.75:23-25, 137:24-138:5); that he lacked the capability to delete the footage (*id.*, PageID.2230, p.138:7-9); and Mihm expressly denied that he deleted or destroyed the footage. (*id.*, PageID.2298, p.206:6-9).  Nor had MDOC investigatory officials notified Mihm about Henry's grievance until October 1, 2022. (*Id.*, PageID.2296-97, 2300, pp.204:25-205:7, 208:7-10).  And by then, the prison video surveillance system had already purged the relevant footage. (*Id.*, PageID.2202, p.110:6-11).  So it would seem that Mihm did not possess the means or opportunity to preserve the footage because of impending litigation.

Henry disagrees.  He counters that Mihm knew about his grievance before October 1 because he verbally threatened to sue Mihm previously. (ECF No. 122, PageID.2122-23, pp.30:24-31:11).  But Henry's offhand verbal threat of litigation – "[t]hat's why I'm going to sue your ass" – does not demonstrate, by a preponderance of the evidence, that Mihm was aware of the grievance before Mihm's October 1 interview with an MDOC investigator. (*Id.*). *See, e.g., Green v. Stribling*, No. 23-02302, 2025 U.S. Dist. LEXIS 182710, at *23-24 (E.D. Cal. Sep. 17, 2025) (holding that a verbal threat to file a grievance did not constitute "evidence that defendant knew whether plaintiff had actually lodged a grievance before defendant initiated the May 17 Report").  Henry's assertion that another corrections officer threatened

13

him, "I'll teach you to write PREAs . . . on Mihm," equally falls short of establishing, by a preponderance of the evidence, that Mihm was aware of the grievance prior to October 1. (ECF No. 122, PageID.2125, p.33:11-19; ECF No. 110, PageID.2031). Aside from Henry's own speculation, there is no evidence in the record from which to infer that Mihm informed his colleagues that Henry had filed a grievance against him.

But if Mihm is not responsible for losing the video footage, then who is? All fingers point to MDOC. The agency maintained and controlled the video surveillance system (ECF No. 92-9, PageID.879, p.34:17-35:2); MDOC supervisory and investigatory officials had access to it (ECF No. 92-6, PageID.853, p.33:5-8; ECF No. 92-8, PageID.869, p.45:10-17; ECF No. 92-9, PageID.879, p.34:15-16; ECF No. 122, PageID.2209, p.117:4-6); and MDOC established the video surveillance system's retention parameters (ECF No. 92-5, PageID.817-18, pp.27:15-28:15; ECF No. 122, PageID.2209-10, p.117:23-118:1).

The difficulty is that MDOC is not (and cannot be) a "party" to this action as Rule 37(e) requires. The Eleventh Amendment to the United States Constitution precludes MDOC from being hauled into federal court to answer for federal civil rights violations. See *Smith v. Kentucky*, 36 F.4th 671, 676 (6th Cir. 2022); *see also Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (holding that MDOC is entitled to Eleventh Amendment immunity). That leaves open the question whether

14

MDOC's responsibility for losing the video footage may be imputed to Mihm for the purpose of imposing Rule 37(e) sanctions.

The United States Court of Appeals touched upon this issue in *Adkins v. Wolever (Adkins II)*, 692 F.3d 499 (6th Cir. 2012) – a case decided before the United States Supreme Court adopted Rule 37(e) in its current iteration.  In *Adkins II*, a Michigan prisoner appealed the district court's denial of his motion for spoliation sanctions after MDOC officials lost surveillance video of an alleged assault.  The prisoner asserted that the deleted video would have depicted a corrections officer forcibly "yanking his hands through a slot in the cell door before removing his handcuffs." *Id.* at 501.  The district court denied the spoliation motion on the ground that "the preservation" of the video "was entirely beyond Officer Wolever's control." *Id.* at 504.  And the Sixth Circuit affirmed that decision after concluding that the "ultimate determination of culpability is within the district court's discretion so long as it is not a clearly erroneous interpretation of the facts." *Id.* at 505-06.

The court of appeals did acknowledge, however, a sizable body of precedent favorable to the prisoner (and Henry), where federal courts imposed spoliation sanctions on *parties* for *nonparty* conduct resulting in the loss or destruction of relevant evidence. *See id.* at 505 (collecting cases).  The Sixth Circuit observed that these cases, although "not binding precedent requiring the district court to impose a spoliation sanction in this instance," are nonetheless "relevant to why the district

court *could have* granted Adkins's request for an adverse inference instruction only to the extent we find them persuasive." *Id.* (emphasis added). And the court of appeals further noted that "[w]hile the district court *could have* followed other district courts and found Wolever culpable even though the prison, not Wolever, lost the evidence, the case law supporting such a finding does not *require* the court to find that level of negligence." *Id.* (emphasis added and in original).

The main import of *Adkins II* is this: insofar as the Sixth Circuit is concerned, imputing responsibility for lost or destroyed evidence from nonparties to parties is not beyond the pale when the district court exercises its inherent authority to impose spoliation sanctions. There is no principled reason to treat imputation in the Rule 37(e) setting any different.

Deciding when imputation is appropriate under Rule 37(e) remains an open question in the Sixth Circuit. *See Bruin*, 2025 U.S. Dist. LEXIS 12869, at *21 (noting that the Sixth Circuit Court of Appeals has not addressed "whether a party can be held responsible for a non-party's destruction of electronically stored information."). Other federal courts have imputed the duty to preserve electronically stored information to employing law enforcement agencies or municipalities. *See, e.g., Johns v. Gwinn*, 503 F. Supp. 3d 452, 465 (W.D. Va. 2020) (imputing responsibility for preservation to state corrections department); *Woods v. Scissons*, No. 17-08038, 2019 U.S. Dist. LEXIS 137305, at *12-14 (D. Ariz. Aug. 14, 2019)

16

(imputing responsibility for preservation of dashcam video to the nonparty municipality rather than the individual officer defendant); *see also Perez v. Molina*, No. 23-801, 2025 U.S. Dist. LEXIS 33933, at *14 n.3 (S.D.N.Y. Feb. 25, 2025) (holding that "[a]lthough there is no evidence that any of the individual defendants were personally responsible for the loss of the Genetec video footage, DOC's conduct is appropriately imputed to them for purposes of Rule 37(e).").

As far as this Court can discern, no federal court in the Sixth Circuit has yet formulated a workable standard for determining when the responsibility for losing electronically stored information may be imputed from a correctional department to an individual officer defendant.

The clearest, most comprehensive, and frankly, most commonsense approach may be gleaned from district courts in the Second Circuit. Those courts seem to have coalesced around what they denominate as the "special relationship" test. Employing this framework, courts evaluate multiple factors, such as: "(1) who employed the officer defendant; (2) who trained the officer defendant; (3) who represented the officer defendant; (4) who controls the evidence introduced in the officer defendant's favor; (5) whether the third-party indemnifies the officer defendant; and (6) whether a settlement is subject to approval by the third-party." *Castro v. Smith*, No. 16-8147, 2023 U.S. Dist. LEXIS 149515, at *18 (S.D.N.Y. Aug. 22, 2023); *see also Johns*, 503 F. Supp. 3d at 463.

17

Mihm's relationship with MDOC satisfies *all* these criteria.  MDOC employs Mihm as a corrections officer (factor one) (ECF No. 122, PageID.2161, p.69:19-21); MDOC trained him (factor two) (*id.*, PageID.2158, p.66:1-5); MDOC's counsel – Michigan's Department of the Attorney General, Corrections Division – is representing him in this litigation (factor three), *see* Mich. Comp. Laws § 691.1408(1), Michigan Civil Service Commission Rule 2-19; no one disputes that MDOC controls the evidence introduced on Mihm's behalf – the agency provides the materials and information responsive to Henry's discovery requests and it produced the MDOC employees who testified at the evidentiary hearing (factor four); MDOC will likely indemnify Mihm in the event Henry obtains a judgment against him (factor five), *see* MDOC Policy Directive 02.01.02(P), Mich. Comp. Laws § 691.1408(1); and MDOC's Director or her designee possesses the sole authority to settle this litigation on Mihm's behalf (factor six), *see* MDOC Policy Directive 02.01.02(S).

Because the above factors demonstrate the existence of a "special relationship" between Mihm and MDOC, their "interests are sufficiently aligned and closely interrelated such that imputing" MDOC's responsibility for the deleted video footage to Mihm "is appropriate." *Castro*, 2023 U.S. Dist. LEXIS 149515, at *19 (quotation omitted).  Mihm's objection to the magistrate judge's recommendation on the basis that he lacked control over the video footage must, therefore, be sustained.

18

MDOC is the entity responsible for the lost surveillance video.  And the agency's culpability (if any) is imputable to Mihm as the "party" to this litigation under Rule 37(e).

One final point about the equity of this ruling.  There is "nothing unfair" about holding Mihm accountable for MDOC's "failure." *Castro*, 2023 U.S. Dist. LEXIS 149515, at *20.  Since Mihm and MDOC's "interests are sufficiently aligned and closely interrelated in this action" MDOC would feel any imposed sanction "most acutely." *Id.* (quotation omitted).  And because the agency is a repeat-participant in prisoner civil rights litigation in this district, the "prophylactic, punitive and remedial" concerns that any potential sanctions aim to address are best targeted at MDOC. *Id.*

### D.      *Rule 37(e)(1) Analysis*

Having identified MDOC as the responsible party, the Court must next evaluate whether the agency's preservation efforts ran afoul of Rule 37(e)(1).  Each of the rule's elements will be discussed in turn.

#### 1.      Anticipation of Litigation

Parties to civil litigation have a duty to preserve electronically stored information when they "should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008), *abrogated on*

19

*other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *see also Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013).

In the prisoner setting, courts may examine several factors to assess the foreseeability of litigation, such as "the type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the course of conduct between the parties, including past litigation or threatened litigation; and what steps both parties took after the incident and before the loss of the evidence, including whether the defendant initiated an investigation into the incident." *Bistrian*, 448 F. Supp. 3d at 468 (internal quotation marks omitted); *see also Manning v. Erdos*, No. 22-371, 2024 U.S. Dist. LEXIS 101756, at *13 (S.D. Ohio Jun. 7, 2024).

The circumstances in this case indicate that MDOC "should have known" that the video footage would be "relevant to future litigation." *John B.*, 531 F.3d at 459. Henry filed a grievance about the incident the following day, on August 14, 2022 (ECF No. 97, PageID.1012), which, "combined with other circumstances, may be enough notice that the video recording of the incident will be relevant to future litigation." *Henry v. Mihm*, No. 22-12830, 2025 U.S. Dist. LEXIS 83231, at *10 (E.D. Mich. May 1, 2025); *see also Annabel v. Frost*, No. 14-10244, 2023 U.S. Dist. LEXIS 25714, at *8 (E.D. Mich. Feb. 15, 2023); *Bruin*, 2025 U.S. Dist. LEXIS 12869, at *13-14; *Bistrian*, 448 F. Supp. 3d at 469.

Henry specifically requested that MDOC officials review the video footage outside his cell to verify his account of the incident. (ECF No. 97, PageID.1012). *See Annabel*, 2023 U.S. Dist. LEXIS 25714, at *8 (finding the duty to preserve arose because the grievance requested that the video evidence be preserved for litigation); *see also Johns*, 503 F. Supp. 3d at 466-67.

Henry's allegations raised an issue of significant public concern – the sexual abuse of a prisoner at the hands of corrections officials or other inmates – a problem both serious and pervasive enough that Congress enacted the Prison Rape Elimination Act ("PREA") in 2003. *See Doe v. Snyder*, 945 F.3d 951, 955-56 (6th Cir. 2019) (stating that "Congress enacted PREA with the purpose of implementing standards and policies to prevent prison rape and to protect the Eighth Amendment rights of Federal, State, and local prisoners.") (quotation omitted).

MDOC opened a mandatory PREA investigation into Henry's allegations. (ECF No. 97, PageID.1011). *See Bistrian*, 448 F. Supp. 3d at 470 ("[A] defendant's decision to open an investigation can indicate that it was reasonable to expect a lawsuit."); *see also Hargis v. Overton Cnty. Tenn.*, No. 22-00011, 2023 U.S. Dist. LEXIS 220824, at *33-34 (M.D. Tenn. Dec. 12, 2023); *Manning*, 2024 U.S. Dist. LEXIS 101756, at *20-21.  The PREA requires MDOC to collect and preserve "any available electronic monitoring data" as part of its investigation. 28 C.F.R. § 115.71(c); *see also* Fed. R. Civ. P. 37(e) advisory committee's note to 2015

amendment (stating that "courts may sometimes consider whether there was an independent requirement that the lost information be preserved" and noting that these sources may include "statutes" and "administrative regulations"). And MDOC follows this protocol whenever there is an impending PREA investigation. (ECF No. 92-5, PageID.826-27, pp.56:5-57:7).

Viewing these factors together, MDOC "should have . . . preserved" the video footage "in the anticipation . . . of litigation." Fed. R. Civ. P. 37(e).

### 2. Reasonable Steps Towards Preservation

Rule 37(e)(1) "requires reasonable efforts to preserve" electronically stored information "after [the] duty to do so [i]s triggered." 8B Wright & Miller, *supra*, § 2284.2. "[T]he routine, good-faith operation of an electronic information system [is] a relevant factor . . . in evaluating whether a party failed to take reasonable steps to preserve lost information." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. On the other hand, "the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation." *Id.*

The MDOC officials most responsible for investigating Henry's allegations, and who possessed the credentials to access the video surveillance system, are Inspector Christopher Hawkins – the prison grievance coordinator, Inspector Russell Wahtola, Jr. – the PREA coordinator, and then-Sergeant Jackie Vallance – the PREA

22

investigator assigned to Henry's grievance.   None of their actions support the inference that MDOC took reasonable steps to preserve the relevant video footage.

Now, to MDOC's credit, Inspector Wahtola somehow obtained video footage taken from outside Henry's cell at the time of the alleged incident on August 12, 2022. (ECF No. 110).  He reviewed it, concluded that the footage depicted nothing actionable, and closed the grievance. (*Id.*).  But Wahtola and other MDOC officials overlooked a critical fact: that Henry's initial grievance *estimated* the incident occurred "on or near the 12th of August @ approx. 2:10 p . . ." (ECF No. 110).  And Henry reiterated this estimation in subsequent grievances. (ECF No. 110) ("On or near 8-12-22 @ approx. 1:20-2:10 p").  Yet the MDOC's investigating officials never attempted to retrieve the video footage for the day preceding or following August 12, narrowed to the relevant timeframes.

For instance, Inspector Hawkins testified that he could search and retain copies of video footage referenced in a grievance when it is not attached to the initial grievance form. (ECF No. 92-8, PageID.869-70, p.45:23-46:4).  He did not pursue that option in this case.  Inspector Wahtola attested that although he was aware that Henry's allegations encompassed a date range, rather than a specific date and time, he did not retrieve additional footage from the video surveillance system to verify Henry's account. (ECF No. 92-5, PageID.841-42, pp.124:8-125:25).  And Sergeant Vallance related that she typically attempts to obtain relevant video evidence (ECF

23

No. 92-6, PageID.852, p.32:4-5); that she can access the video surveillance system to retrieve additional footage that is not included in the PREA file initially (*id.*, PageID.853-54, pp.33:5-8, 33:12-14, 34:20-25); and that she has obtained additional footage from the video surveillance system to verify allegations in other investigations (*id.*, PageID.855, p.35:1-4). She did not resort to those measures here, although she knew Henry could only approximate when the alleged incident occurred. (*Id.*, PageID.856, p.53:9-10).

What is more, Hawkins, Wahtola, and Vallance all failed to take the most basic and direct step towards ascertaining when the alleged incident may have likely transpired: *they could have asked Mihm.* Granted, MDOC policy forbids the grievance's subject from participating "in any capacity in the grievance investigation, review, or response." MDOC Policy Directive 03.02.130(BB). (*See also* ECF No. 122, PageID.2252, p. 160:14-17). But a key exception to the general policy is where the subject's participation is "necessary to provide information to the respondent." MDOC Policy Directive 03.02.130(BB). (*See also* ECF No. 122, PageID.2253, p.161:2-11).

Interviewing Mihm at an earlier stage in the grievance process would have (1) provided MDOC's investigators with a more accurate timeframe of his interactions with Henry, (2) enabled them to perform a timely, narrowly-focused search for additional footage, and (3) significantly enhanced the likelihood they could have

24

preserved the relevant video footage.   Instead, Sergeant Vallance only first interviewed Mihm on October 1, 2022 – when Mihm first became aware of the investigation – after the prison surveillance system had already purged the relevant footage.[3] (ECF No. 122, PageID.2202, 2296-97, 2300, pp.110:6-11, 204:25-205:7, 208:7-10).   The failure to interview Mihm at the outset of the investigation, when MDOC investigators were already aware that Henry could not recall precisely when the alleged incident occurred, was unreasonable.

3.   Restoration or Replacement Through Additional Discovery

None of the parties contest that the prison surveillance system purged the relevant video footage.   Those images are now permanently irretrievable from another source. (ECF No. 92, PageID.781).

4.   Prejudice

---

[3] The magistrate judge surmised that Mihm may have obstructed the PREA investigation because (1) his testimony at the evidentiary hearing demonstrates that he knew the alleged incident occurred on the afternoon of August 13 – not August 12, and (2) he failed to inform Sergeant Vallance of the correct timeframe at the October 1 interview. (ECF No. 128, PageID.2461; *see also* ECF No. 122, PageID.2176, p.84:14-22).   The Court rejects this view of the evidence because Sergeant Vallance expressly instructed Mihm to limit his interview responses to what transpired "on August 12, 2022, and outside of cell 18-B-1 South at approximately 1410 hours." (ECF No. 110, PageID.2040) ("I instructed CO Mihm to be specific to just that incident.").   Narrowing the scope of the PREA inquiry at such an early stage may have been unwise, but Vallance's investigatory tactics should not work to Mihm's detriment.

A district court's assessment of the prejudice (if any) resulting from a Rule 37(e)(1) violation "necessarily includes an evaluation of the [lost] information's importance in the litigation." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.  The difficulty with evaluating prejudice in this context is that often the movant can only speculate as to what the lost video footage would have depicted.  That is why Rule 37(e)'s drafters recognized that "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.

Although the Sixth Circuit Court of Appeals has not set a standard for determining Rule 37(e)(1) prejudice, the most balanced test emerges from district courts in the Second Circuit.  To support a finding of prejudice, they ask whether "the existing evidence plausibly suggests that the spoliated ESI could support the moving party's case." *Castro*, 2023 U.S. Dist. LEXIS 149515, at *30-31 (quotation omitted) (collecting cases).  That standard is met here.

No one disputes that, had MDOC preserved the video footage, the placement and vantage point of the prison surveillance cameras would have captured what transpired between Henry, Mihm, and the other corrections officers. (ECF No. 122, PageID.2151, 2182-83, 2222, pp.59:7-21, 90:15-91:19, 130:3-5).  Even if the video footage lacked accompanying audio – such that the jury could not hear the verbal

26

exchange between Mihm and Henry – the depicted images would have confirmed (1) whether Henry "bolted" from his cell unclothed (as Mihm contends – *see* ECF No. 122, PageID.2181-83, pp.89:4-6, 90:8-11, 91:17-19), or (2) whether Mihm directed Henry out the cell naked and paraded him before the other corrections officers and within the view of other inmates (as Henry contends).

Because the existing video evidence plausibly suggests that the lost surveillance footage could have supported Henry's version of events, the record adequately supports a finding of Rule 37(e)(1) prejudice.

E.       *Rule 37(e)(2) Analysis – Intent*

To demonstrate the level of culpability necessary to impose Rule 37(e)(2) sanctions requires a showing that "the party [who] lost the information acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment; *see also Applebaum*, 831 F.3d at 745.  The "intent to deprive" test is "both stringent and specific." *Hoffer*, 128 F.4th at 440 (quotation omitted).  "Proving such specific intent is not easy." *Id.* It poses a "high bar" that "frequently depends upon circumstantial evidence." *Id.*  "A showing of negligence or even gross negligence" does not meet this threshold. *Applebaum*, 831 F.3d at 745; *see also Hoffer*, 128 F.4th at 438 ("A party's acting negligently or knowingly will not suffice to justify the sanctions enumerated in Rule 37(e)(2).").

Whether the offending party "*affirmatively* destroys the data, or *passively* allows it to be lost, is irrelevant; it is the spoliator's *state of mind* that logically supports" the imposition of Rule 37(e)(2) sanctions. *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) (collecting cases).

As discussed above, the MDOC officials most culpable for losing the relevant video footage would be Inspector Hawkins, Inspector Wahtola, and Sergeant Vallance.  Yet nothing in the record indicates that they failed to preserve the relevant video footage with the intent to deprive Henry of its use in the litigation.

Their testimony (which is already summarized in section IV.D.2), along with the other relevant portions of the record, instead demonstrate a pattern of disconcerting investigatory missteps.  Perhaps the most glaring oversight is their collective failure to interview Mihm earlier in the investigation to ascertain when the alleged incident may have in fact occurred.  But there is simply no evidence – let alone a preponderance of it – to support the conclusion that MDOC officials allowed the video surveillance system to overwrite the relevant footage with the intent to deprive Henry of probative material.

Since the MDOC's investigatory officials lacked the culpable mental state that Rule 37(e)(2) demands, the corresponding sanctions listed in that provision are unavailable.

28

### F.     Remedial Measures

Because MDOC's loss of the relevant video footage satisfies Rule 37(e)(1) *only*, the Court may "order measures no greater than necessary to cure" the resulting prejudice. *Id.*  "The range of such measures is quite broad if they are necessary for this purpose" – "[m]uch is entrusted to the court's discretion." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.

Appropriate measures may consist of "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." *Id.*  Whatever measures the district judge adopts, however, they may not venture into the domain of Rule 37(e)(2) sanctions. *See id.*; *see also* 8B Wright & Miller, *supra*, § 2284.2.

Considering the totality of the evidence, the following measures are most appropriately tailored to remedy the prejudice stemming from the lost video footage:

- Mihm and his co-defendant(s) are barred at trial from suggesting to the jury (either through testimony, argument, or instruction) that they may draw any inference whatsoever as to Henry's credibility due to the absence of the video footage depicting the alleged incident; and

- Henry is permitted to elicit testimony at trial from any witness about the existence of the missing video footage, as well as the circumstances surrounding its loss, and may suggest to the jury (either through testimony, argument, or instruction) that an adverse witness lacks credibility on account of those circumstances.

These parameters are consistent with Rule 37(e)(1)'s intent that "the severity of given measures must be calibrated in terms of their effect on the particular case." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. Accordingly,

IT IS ORDERED that Mihm's objections to the magistrate judge's August 22, 2025 report and recommendation (ECF No. 129) are sustained.

IT IS FURTHER ORDERED that the magistrate judge's August 22, 2025 report and recommendation (ECF No. 128) is rejected.

IT IS FURTHER ORDERED that Henry's motion for Rule 37(e) spoliation sanctions (ECF No. 92) is granted in part and denied in part consistent with this opinion and order.

30

Dated: March 5, 2026

s/ Robert J. White
Robert J. White
United States District Judge

31